UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROBERT HART,

    Plaintiff,

v.                                       CASE No. 8:08-CV-1006-T-TGW

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____

## ORDER

The plaintiff in this case seeks judicial review of the denial of his claim for Social Security disability benefits.[1] The plaintiff has failed to demonstrate that the decision of the Commissioner of Social Security is not supported by substantial evidence or contains reversible error. In all events, the claim is defeated by the unchallenged finding that the plaintiff's substance abuse was a contributing factor material to his alleged disability.

---

[1] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 20).

I.

The plaintiff, who was fifty years old at the time of the administrative hearing and who has more, or less, a high school education (compare Tr. 1122, 1235), has worked as a heating and air conditioning technician and service manager (Tr. 111). He filed a claim for Social Security disability benefits, alleging that he became disabled in June 2005 due to post-traumatic stress disorder and bipolar disorder (Tr. 110). The claim was denied initially and upon reconsideration.

The plaintiff, at his request, then received a de novo hearing before an administrative law judge. The law judge found that the plaintiff has severe impairments of substance abuse, bipolar disorder, post-traumatic stress disorder, personality disorder, and narcotics-induced epilepsy (Tr. 13). She concluded that these impairments allowed the plaintiff to perform a full range of work at all exertional levels, but limited to "simple, repetitive tasks in a low stress, safe, setting (no significant public contact, no unprotected heights, climbing of scaffolds/ropes/ladders, and moving machinery)" (Tr. 15). The law judge determined that these limitations prevented the plaintiff from returning to past work (Tr. 20). However, based upon the testimony of a

vocational expert, the law judge ruled that jobs exist in the national economy in significant numbers that the plaintiff could perform, such as wrapper/hand packer, small products bench assembly worker inspector, and merchandise marker/order (Tr. 21). Accordingly, the law judge decided that the plaintiff was not disabled (Tr. 22). The law judge found, alternatively, that, even if the plaintiff were disabled, his claim would be denied because drug and alcohol abuse would be a material part of any finding of disability. The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

II.

A. In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by

medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004)(en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by

substantial evidence. <u>Celebrezze</u> v. <u>O'Brient</u>, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. <u>Lamb</u> v. <u>Bowen</u>, 847 F.2d 698, 701 (11th Cir. 1988).

B. The Commissioner's regulations set out what is termed a "sequential" analysis for deciding disability claims. <u>See</u> 20 C.F.R. 404.1520. One of the threshold inquiries (step two) is whether a claimant has a severe impairment. 20 C.F.R. 404.1520(c). An impairment is not severe if it does not significantly limit a claimant's physical or mental abilities to do basic work activities. 20 C.F.R. 404.1521(a). If an impairment is not severe, then a claimant is deemed to be not disabled. 20 C.F.R. 404.1520(c).

When an impairment is severe, but does not meet, or equal, a listing in Appendix 1 (step three), a further inquiry (step four) is made as to

whether the impairment prevents the claimant from doing past relevant work. 20 C.F.R. 404.1520(e). If a claimant cannot do such work, an additional determination (step five) is made concerning whether the claimant can perform other work which exists in substantial numbers in the national economy. In such cases, the regulations direct that an individual's residual functional capacity, age, education and work experience be considered in determining whether the claimant is disabled. These factors are codified in tables of rules, known as "guidelines" or "grids," that are appended to the regulations. 20 C.F.R. Part 404, Subpart P, Appendix 2.

### III.

The law judge found that the plaintiff was exertionally capable of a full range of work but had nonexertional limitations that were not disabling. Moreover, as an alternative finding, the law judge determined that, even if the plaintiff were found disabled, his drug and alcohol abuse would be a material part of any finding of disability, thus precluding such a finding (Tr. 22). Importantly, the plaintiff does not challenge this determination. In light of the abundant evidence of the plaintiff's alcoholism, as well as his

abuse of benzodiazepine (Tr. 589), the plaintiff's claim would fail even if the law judge had erred in finding that the plaintiff was not disabled.

The Social Security Act provides that "[a]n individual shall not be considered to be disabled for purposes of this subchapter, if alcoholism or drug addiction would ... be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. 423(d)(2)(c). In other words, the Act "preclude[s] the award of benefits when alcoholism or drug addiction is determined to be a contributing factor material to the determination that a claimant is disabled." Doughty v. Apfel, 245 F.3d 1274, 1275 (11th Cir. 2001). Consequently, the plaintiff's failure to challenge the law judge's finding that "[d]rug and alcohol abuse would be a material part of any finding of disability" precludes relief in all events.

Nevertheless, the three contentions raised by the plaintiff will be addressed. While the plaintiff has identified one troublesome aspect of the law judge's decision, he has failed to demonstrate reversible error with respect to the finding of not disabled.

The plaintiff argues first that the law judge did not give proper consideration to the opinions of treating psychiatrists, Dr. Lori S. Shriner

and Dr. N. Dajani (Doc. 24, pp. 22-25). Those psychiatrists filled out Psychiatric Impairment Questionnaires identifying certain mental limitations (Tr. 1792-1804).

Opinions from treating physicians are entitled to substantial or considerable weight unless there is good cause for not affording them such weight. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). Good cause exists when the treating physician's opinion is not bolstered by the evidence, the evidence supports a contrary finding, or when the opinion is conclusory or inconsistent with the physician's own medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). The questionnaires are somewhat conclusory and do not contain objective findings or cogent explanations for the asserted limitations. Those circumstances justify discounting the opinions.

With respect to Dr. Dajani, the law judge gave his opinion greater weight than she gave to Dr. Shriner. On the questionnaire, Dr. Dajani checked the box next to "Repeated (3 or more)" episodes of deterioration with each episode lasting at least two weeks (Tr. 1803). Dr. Shriner marked "continual" (Tr. 1799). The law judge accepted Dr. Dajani's

assessment on this point over Dr. Shriner's (Tr. 14). The law judge reasonably explained that, among other things, Dr. Shriner's assessment would mean that the plaintiff was near total incapacitation (id.). The evidence easily supports the conclusion that the plaintiff was not incapacitated to that extent.

These opinions regarding decompensation, furthermore, concerned the issue of whether the plaintiff met, or equaled, a listing in Appendix 1. See 20 C.F.R. 404.1525. The plaintiff makes no contention that the plaintiff met, or equaled, an Appendix 1 listing. Therefore, the law judge's evaluation of the plaintiff's decompensation has not been properly presented as an issue.

The more problematic aspect of the law judge's assessment of the opinions by Dr. Dajani and Dr. Shriner concerns their opinions that the plaintiff's impairments would cause him to be absent from work more than twice a month (Tr. 1798, 1802). It is not the episodes of decompensation, but these doctors' opinions, that are to be considered with respect to the plaintiff's residual functional capacity, as the law judge indicated (Tr. 15) and the Commissioner explained (Doc. 27, pp. 9-10).

The law judge erred, as the Commissioner seems to acknowledge (id., p. 10), when she did not specifically refer to Dr. Dajani's opinion (and Dr. Shriner's opinion) that the plaintiff would miss more than two days of work per month (id.; Tr. 1802). The law judge should have explained why she did not include that limitation in her residual functional capacity and concomitantly in her hypothetical question to the vocational expert.

The plaintiff, however, has failed to demonstrate that this was reversible error. In the first place, the plaintiff had the burden, after the Commissioner articulated through the testimony of the vocational expert specific jobs that the plaintiff could perform, to prove that he was unable to perform those jobs. James v. Barnhart, 177 Fed.Appx. 875, 878 (11th Cir. 2006). Accordingly, plaintiff's counsel should have asked the vocational expert a hypothetical question that included a limitation of missing more than two days of work per month. He failed to do so. Thus, there is no evidence that such a limitation would render the plaintiff unable to perform the jobs identified by the vocational expert and accepted by the law judge.

Furthermore, the plaintiff has failed to show that he would miss more than two days of work per month in the absence of his alcohol and drug

abuse. On the questionnaires, Dr. Shriner and Dr. Dajani listed either alcohol dependence (Tr. 1797) or history of polysubstance abuse (Tr. 1801) as diagnoses. Moreover, Dr. Shriner, whose contact with the plaintiff appears to be primarily through a substance abuse treatment program, commented that "[j]obs, relationship and health have all been affected by his abuse of this substance" (alcohol) (Tr. 1522). The law judge noted that there is an "overwhelming substance abuse component that pervades the record" (Tr. 19), adding further that "[t]he record is replete with evidence of continued addictive substance intake" (Tr. 22). For example, after completing a twenty-eight day inpatient substance abuse program, the plaintiff relapsed immediately (Tr. 574).

As previously explained, the Social Security Act precludes an award of benefits to the extent that disability is contributed to by alcoholism or drug abuse. Accordingly, the plaintiff needed to show that the opinions that the plaintiff would miss more than two days of work per month were not based upon his substance abuse. The plaintiff has made no attempt to do so. Those opinions, therefore, cannot properly be considered in determining whether the plaintiff is disabled.

The plaintiff contends also that the law judge did not assess, or state, the weight afforded to the opinion of Dr. Shriner (Doc. 24, p. 23). The law judge, however, expressly said that she would not give Dr. Shriner's opinion controlling weight (Tr. 20). As indicated, she explained why she was discounting Dr. Shriner's opinion that the plaintiff has continual episodes of decompensation. Moreover, the law judge contrasted Dr. Shriner's opinions with those of Dr. Dajani rendered six days earlier, stating that they were "unique, and accompanied by less supportive records in the same package from counsel that may best describe the patient's current status" (Tr. 14).

The law judge pointed out, further, that Dr. Shriner "diagnosed mainly 'dysthymia,' not major depression" and "also cited only 'rule out' (i.e. 'consider') PTSD, in addition to 'Cluster B Personality Disorder'" (Tr. 16). The law judge could reasonably conclude that these diagnoses (aside from alcohol dependence) do not reflect total mental disability.

The plaintiff's final challenge is to the law judge's credibility determination. The Eleventh Circuit has articulated a standard for assessing allegations of pain and other subjective complaints. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). As the court of appeals explained in Landry

v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986), the pain standard "required evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." If the law judge determines that there is objective medical evidence of an impairment which could reasonably be expected to produce disabling pain, the law judge "must evaluate the credibility of claimant's testimony as to pain, and must express a reasonable basis for rejecting such testimony." Hand v. Heckler, 761 F.2d 1545, 1549 n.6 (11th Cir. 1985).

The law judge recognized the need to articulate a credibility determination and referred to the pertinent regulation and Social Security rulings (Tr. 18). Moreover, she set forth the governing principles (id.). This demonstrates that she applied the Eleventh Circuit pain standard. Wilson v. Barnhart, 284 F.3d 1219, 1225-26 (11th Cir. 2002).

Furthermore, the law judge provided detailed reasons for her credibility determination regarding the plaintiff's mental status (Tr. 19-20). In this respect, the law judge noted such circumstances as the failure to follow

medical advice, the lack of electroshock or major tranquilizers, a history of missing appointments, and non-compliance with prescribed medications, all of which indicate that the intensity of the plaintiff's symptoms are not as great as he claimed. The law judge also pointed to the plaintiff's exaggeration of his problems, which is highlighted by his responses to two different psychological tests that rendered the tests "extremely invalid" (Tr. 1225).[2] The law judge, in addition, noted concerns about malingering (Tr. 20; see also Tr. 1607). Further, the law judge appropriately considered the plaintiff's conduct at the hearing and his criminal convictions, including one for burglary. Cf. Rule 609(a), F.R.E.[3] The record also reflects that the plaintiff was not always candid with his doctors, since, on one occasion, he admitted to a nurse that he had told a doctor that he had had nothing to drink for days when in fact he had had his last drink just before going to the emergency room (Tr. 1664).

---

[2]The record shows that the plaintiff is prone to exaggeration. Thus, he has told a mental health provider that, if the judge in his divorce proceeding saw him again, the plaintiff would be shot (Tr. 1332). He has also said that he has played in many televised golf tournaments (Tr. 1123).

[3]The plaintiff's veracity is further called into question by the implausible explanation for the burglary conviction (Tr. 1235).

These reasons are clearly sufficient to justify the law judge's credibility determination regarding the plaintiff's mental status. Notably, the law judge did not totally reject the plaintiff's allegations regarding his mental impairment. Rather, she concluded that the plaintiff was substantially impaired. She only rejected the allegation of total disability.

In his challenge to the credibility determination, the plaintiff quarrels with some comments the law judge made in connection with that determination (Doc. 24, pp. 25-28). Those assertions plainly do not compel a different credibility determination.

For these reasons, the plaintiff has failed to demonstrate that the law judge's finding that the plaintiff was not disabled should be reversed. However, even if the plaintiff had made such a showing, his claim would be foreclosed by the law judge's alternate finding regarding the plaintiff's alcohol and drug abuse.

As explained, the law judge found, in the alternative, that the plaintiff's polysubstance abuse was a contributing factor material to his disability, thereby rendering him ineligible for benefits. Her explanation was more than adequate. The law judge stated (Tr. 22-23):

The record is replete with evidence of continued addictive substance intake. For example, he was imprisoned for ethanol offenses, and intoxicated while in the hospital for other related ailments as late as winter and late spring 2007 [Exhibit 14F]. Doctors criticized his attempts to get prescriptions on a number of occasions [*e.g.*, Exhibit 9F].

. . .

Counsel himself did not deny the ethanol episodes, instead attempting to separate the earlier controlled liquor use from the anxiety depression that allegedly led to the claimant leaving work. (He also contended that his client's mood and tension led him to take intoxicants to self-medicate). Nevertheless, the distinction cannot be made so clearly. His liquor misuse is so closely intertwined with his limitations as to permit little differentiation. It is not impossible that the liquor intake led to, or seriously aggravated mild, anxiety depression, rather than conversely. As seen in that psychological assessment, his mental lapses or age do not seem so advanced that he is incapable of understanding the consequences of his substance use, as staff explained to him following the hospital visits for the related digestive disease.... Clinicians closely correlated the controlled substance use with his depression and memory loss, and warned of worsening or failure to recover with continued loss....Although supportive as to limitations, Dr. Shriner prominently included alcohol abuse prominently in her latest diagnoses of fall 2007 [Exhibits 9F, 17F]. Amelioration of his condition thus would be within his voluntary

control even if his related conditions were disabling (20 CFR 404.1530).

The plaintiff has totally ignored this alternative finding. Thus, the finding stands unchallenged. This is especially noteworthy in light of the requirement of the scheduling Order which required the plaintiff to "identify with particularity the discrete grounds upon which the administrative decision is being challenged" and to support such challenge "by citations to the record of the pertinent facts and by citations of the governing legal standards" (Doc. 18, p. 2).

The unchallenged finding, as previously explained, precludes an award of disability benefits. Thus, not only has the plaintiff failed to show reversible error, but the alternative finding provides an additional reason for affirming the law judge's decision.

It is, therefore, upon consideration

ORDERED:

That the decision of the Commissioner is hereby AFFIRMED.

The Clerk shall enter judgment in accordance with this Order and CLOSE the case.

DONE and ORDERED at Tampa, Florida, this 3rd day of August, 2009.

*Thomas G. Wilson*
THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE